## Blatz Estate

*Homer H. Hewitt*, of *MacCoy, Evans & Lewis*, for accountants.

SHOYER, J., April 25, 1960.—The auditing judge is confronted with the question of whether the court, sua sponte, should appoint a guardian ad litem to represent the minors and trustee ad litem for unascertained persons in connection with the pending audit of the trustees' account.

Item XI of the deed of trust provides: "I desire to avoid the appointment of guardians and trustees ad litem and therefore direct that all parties in interest, present or future, ascertained or unascertained, shall

be bound (1) by any adjudication of an account of Trustees of which notice is given to all parties who at the time of filing such account are sui juris and (a) entitled to an interest in the trusts hereunder, or (b) would be so entitled if all intervening particular estates should terminate at that time, or (2) by the express approval or ratification of any act of Trustees by all parties who at the time of such approval or ratification are sui juris and (a) entitled to an interest in the trusts hereunder, or (b) would be so entitled if all intervening particular estates should terminate at that time."

The trust is of one-half the proceeds arising under the inter vivos deed of trust dated October 20, 1947, of John B. Blatz, settlor, as amended by him on October 29, 1947, and November 8, 1950.

By the deed settlor transferred certain securities to himself and the Provident Trust Company of Philadelphia, in trust, reserving to himself the income and right to withdraw principal during his lifetime and upon his death (which occurred on January 4, 1958) to divide the remaining corpus into two equal parts, one part for the benefit of his son, Durand B. Blatz, to pay him the net income therefrom during his life and, as amended November 8, 1950, to withdraw up to one-half of the principal of that trust, and upon his death the trust to continue for the benefit of the son's issue until 21 years after the death of the survivor of settlor, his son and the son's children living at the inception of the trust, at which time the trust is to terminate and the corpus be distributed to the son's issue then living, and to pay the net income from the other one-half to settlor's son, Gordon B. Blatz, and his issue upon the same estates and limitations as the trust for Durand, with cross remainder in default of issue of either son, and if there be no issue of the sons, then to those persons who would be entitled to settlor's

estate as though he had then died intestate domiciled in Pennsylvania.

Item IV is entitled "Protective Provision" and is a broad spendthrift provision safeguarding the "interests of the beneficiaries". Items V, VI and VII recite the trustees' powers in detail. Item VIII reserves to settlor the right to revoke, amend or add to the trust.

In Item IX settlor provided that his sons, Gordon B. and Durand B. Blatz, shall succeed him as individual trustees. Upon the sons' ceasing to act, a majority of the persons who are sui juris and entitled to income shall have the power to appoint a successor individual trustee to act with the corporate trustee, and, by the amendment dated October 29, 1947, provided that the beneficiaries who at the time are entitled to income "shall have the power to designate another reputable trust company to replace the corporate trustee then acting. . ."

Item X fixes the compensation of the original corporate trustee. Item XI was referred to above. Finally, Item XII, entitled "Situs", provides that: "The situs of the trusts hereunder is the Commonwealth of Pennsylvania and this trust shall be construed and administered under the laws of said Commonwealth."

The fund being accounted for represents the one-half portion of the original trust as above mentioned which, by the adjudication of Saylor, J., dated June 18, 1958, and schedule of distribution approved and filed pursuant thereto on August 12, 1958, following the death of settlor, was awarded to the Provident Tradesmens Bank and Trust Company, surviving trustee, and Gordon B. Blatz and Durand B. Blatz, succeeding trustees, in trust for Durand.

Durand B. Blatz is living and the trust, carried at a value of approximately $81,000, continues for his benefit. It appears from the statement of proposed distribution that Durand B. Blatz has four children,

each of whom is a minor, the youngest being eight years of age and the oldest 16 years. Settlor also has a daughter, who is stated to be sui juris.

The statement further recites that Durand B. Blatz, the life tenant, resides in Connecticut, and that the "Beneficiaries have exercised their right to change the corporate trustee and have named The Home National Bank and Trust Company of Meriden, Meriden, Connecticut, as trustee in place of Provident Tradesmens Bank and Trust Company."

The written designation by *only Durand* Barrett Blatz of the Connecticut bank in place of the corporate accountant was submitted. This writing has affixed to it an acknowledgment by that bank and by the corporate accountant of a copy of the *notice* of the desired substitution of corporate trustee.

Although the deed of trust as amended does not expressly qualify the substitute of the corporate trustee other than it be "another reputable trust company", it is not apparent from the four corners of the instruments that settlor intended the substitute to be a *foreign corporate* trustee. Since settlor expressly provided that the situs of the trust, its construction, administration and, in default of issue, the distribution, should be in Pennsylvania and according to its laws, it becomes questionable whether settlor intended administration by a *foreign* corporate trustee. Did settlor intend that the trust res should be subjected to payment of bond premiums made necessary by such substitution? Or cost of rental of a depository in this jurisdiction in order that official examinations of the assets might conveniently be made? Or that the trust be administered by those unfamiliar with Pennsylvania law? Or, should the trust be now removed to Connecticut for the convenience of the current life tenant who is sui juris and the ancestor of *some* of the contingent interests?

The answer to these questions is here made more difficult by the very provisions of this otherwise seemingly expertly drawn deed which expresses a desire to avoid the appointment of guardians and trustees ad litem. To accomplish this purpose settlor attempts to bind the ultimate remaindermen, minors and unascertained persons, by the sole acquiescence of a current beneficiary who is sui juris. Such provision is against public policy and violates fundamental concepts of the law. It tends to curtail the administrative powers of the court and would abrogate or negate the powers and duties conferred upon the court by the legislature: Orphans' Court Act of August 10, 1951, P. L. 1163, sec. 601 (5), 20 PS §2080.601 (5). See also section 1085 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.1085, and Philadelphia Orphans' Court Rule 124 as integrated with Supreme Court Rule §12: R. 4. The denial of the power impedes full and thorough investigation of the account and its administration.

Furthermore, since our Supreme Court in Elkins' Estate, 325 Pa. 373, in construing section 48 of the Fiduciaries Act of June 7, 1917, P. L. 447, held that in the absence of fraud all objections to an account, even those of minor and unborn remaindermen, are barred five years after the confirmation of the account, it is abhorrent to the conscience of the court to approve an accounting without proper legal representation of the minority interests. The five-year period of limitation in which to seek a review is continued in sections 721 and 983 of the Fiduciaries Act of 1949, 20 PS §§320.721 and 320.983.

Professor Scott in his treatise on the law of Trusts, vol. I, 2d ed., §62.15, states that "a testator is not allowed unrestricted power to control the machinery of a trust which he has created."

Furthermore, since the life tenant is also a co-trustee and has the power to designate another reputable corporate trustee, the provision tending to bind the minors and unascertained persons by the acquiescence of the life tenant is in the nature of an exculpatory provision. As such it must be strictly construed and is ineffective if it would relieve him of liability in certain instances. II Scott on Trusts, 2d ed., §222.3, at page 1629, states:

"No matter how broad the provision may be, the trustee is liable if he commits a breach of trust in bad faith or intentionally or with reckless indifference to the interests of the beneficiaries, or if he has personally profited through a breach of trust...

". . . there is a growing feeling that certain duties and certain standards of conduct are applicable to the relationship between trustee and beneficiaries, and that these are so necessarily inherent in the relation that they cannot be dispensed with by any provision in the trust instrument."

While there is no intimation in the above statements that the trustees here have committed or intend to commit any breach of trust, even in the broadest sense, or that the trust has been administered in any manner other than exemplary, yet, if there has been any breach of trust or wasting of trust assets, should the acquiescence of the life tenant bar the minors whose interests would be adversely affected thereby?

II Scott on Trusts, 2d ed., §200.4, p. 1506, states that: "As a general rule, of course, a court does not act on its own initiative in protecting rights or enforcing duties . . . that it is the function of the court to see that the directions of the settlor are carried out, even though no one complains to the court of the failure of the trustee to carry them out; that the court has administrative powers as distinguished from strictly

judicial powers; that once the court acquires jurisdiction over the administration of the trust, it is the function of the court to see that the trust is administered in accordance with the directions of the settlor."

Thus, in Laverelle Estate, 101 Pa. Superior Ct. 448, the court stated, pages 451-2: "There can be no question that the orphans' court possesses plenary powers within its particular sphere. Although there was no adverse litigation before the court, the appellant brought himself within its jurisdiction in filing his account. . . In Postlethwaite's App., 68 Pa. 477 (480), the court said, 'It is evident that the jurisdiction of the court having attached by the presentation of the petition, it has entire control of the subject as a court of equity would have. Having all parties before it, it can and ought to make such decree as law and equity require, and which will be binding upon all.' Those interested in this estate are entitled to rely upon the assumption that the court will properly protect all of the assets, and a failure to exercise supervision thereover would be a plain dereliction of duty."

In view of the foregoing, the court now enters the following

### Decree

And now, April 25, 1960, Charles Morris Hamilton, Esq., is appointed guardian ad litem for the minors and trustee ad litem for unascertained persons having any interest in the trust for Durand B. Blatz under the deed of trust of John B. Blatz, settlor, dated October 20, 1947, as amended, to represent said minors and unascertained persons in connection with the audit of said trust account now pending before the court.